**UNITED STATES of America,**
**Plaintiff,**

v.

**DUKE ENERGY CORPORATION,**
**Defendant.**

**No. 1:00CV1262.**

United States District Court,
M.D. North Carolina.

Sept. 6, 2001.

Gill P. Beck, Office of U.S. Attorney, Greensboro, NC, Lois J. Schiffer, U.S. Dept. of Justice, Environmental & Natural Resources Division, Washington, DC, Sonja Petersen, Jason Dunn, John C. Cruden, U.S. Dept. of Justice, Environmental Enforcement Sect., Washington, DC, Alan Dion, U.S. Environmental Protection Agency, Office of Regional Counsel, Atlanta, GA, for United States.

James Blanding Holman, IV, Southern Environmental Law Center, Chapel Hill,

NC, Jeffrey M. Gleason, Southern Environmental Law Center, Charlottesville, VA, for Environmental Defense, North Carolina Sierra Club, and North Carolina Public Interest Research Group Citizen Lobby/Education Fund.

Daniel W. Fouts, Robert Harper Heckman, Adams, Kleemeier, Hagan, Hannah & Fouts, Greensboro, NC, Albert Diaz, T. Thomas Cottingham, III, Nash E. Long, III, Hunton & Williams, Charlotte, NC, Garry Stephen Rice, Duke Energy Corp., Charlotte, NC, Mark B. Bierbower, Henry V. Nickel, William F. Brownell, Makram Jaber, Hunton & Williams, Washington, DC, for Defendant.

## MEMORANDUM OPINION

BULLOCK, District Judge.

This matter is before the court on a motion to intervene as plaintiffs by various environmental groups. These groups are Environmental Defense, North Carolina Sierra Club, and North Carolina Public Interest Research Group Citizen Lobby/Education Fund (hereinafter collectively referred to as "Applicants"). Applicants' motion to intervene is made pursuant to Rules 24(a) and 24(b) of the Federal Rules of Civil Procedure. For the following reasons, the court finds that Applicants have an unconditional statutory right to intervene, and Applicants' motion will be granted pursuant to Federal Rule of Civil Procedure 24(a)(1).

### FACTS

The Attorney General of the United States, acting at the request of the Administrator of the United States Environmental Protection Agency, filed this action against Defendant Duke Energy Corporation ("Duke Energy") on December 22, 2000. The suit alleges that Duke Energy made modifications to and operated eight coal-fired electrical generating plants in North Carolina and South Carolina in violation of the Clean Air Act (the "Act"), 42 U.S.C. § 7401 et seq.

The Prevention of Significant Deterioration ("PSD") provisions of the Clean Air Act, 42 U.S.C. §§ 7470–92, prohibit the modification and operation of any "major emitting facility," such as Duke Energy's electrical generating plants, unless a permit has been issued. The United States contends that Duke Energy modified and operated its electrical generating plants without first obtaining the permits required by the Act.

The State Implementation Plans for North Carolina and South Carolina, enacted pursuant to the Clean Air Act, require state permits prior to certain modifications to "major stationary sources." The Duke Energy plants at issue qualify as "major stationary sources." The United States alleges that Duke Energy failed to obtain the required state permits prior to the modification and operation of its electrical generating plants.

On May 8, 2001, Applicants moved to intervene as plaintiffs. Applicants are public-interest organizations focusing on environmental protection issues. Altogether these organizations claim over 26,-000 members in North Carolina.

### ANALYSIS

Federal Rule of Civil Procedure 24(a), entitled "Intervention of Right," provides in part that "[u]pon timely application anyone shall be permitted to intervene in an action … when a statute of the United States confers an unconditional right to intervene." Fed.R.Civ.P. 24(a)(1). Applicants contend that their motion to intervene is timely and that Section 304 of the Clean Air Act, the Act's citizen suit provision, confers an unconditional right to intervene. Duke Energy does not dispute that the motion to intervene is timely. Duke Energy argues, however, that Sec-

tion 304 provides no right to intervene in the type of lawsuit brought by the United States.

Section 304(a)(1) of the Clean Air Act states that "any person may commence a civil action on his own behalf against any person ... who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of an *emission standard or limitation* under [Chapter 85 of the Clean Air Act]." 42 U.S.C. § 7604(a)(1) (emphasis added). This right to bring suit is limited by Section 304(b)(1)(B) of the Act, which provides in part:

> No action may be commenced under subsection (a)(1) of this section [alleging the violation of an emission standard or limitation] ... if the Administrator [of the EPA] or State has commenced and is diligently prosecuting a civil action in a court of the United States or a State to require compliance with the standard, limitation, or order, *but in any such action in a court of the United States any person may intervene as a matter of right.*

42 U.S.C. § 7604(b)(1)(B) (emphasis added). Thus, Section 304(b)(1)(B) curtails the right to initiate a citizen suit under Section 304(a)(1), but permits intervention as a matter of right. Applicants contend that because the civil action commenced by the United States against Duke Energy alleges the violation of an "emission standard or limitation," as that term is defined in the Clean Air Act, Section 304(b)(1)(B) provides Applicants with an unconditional right to intervene.

Section 304(f)(4) of the Clean Air Act sets forth the definition of "emission standard or limitation" as the term is used in Chapter 85 of the Act (the chapter that includes the citizen suit and PSD provisions). Under that definition, "emission standard or limitation" includes "any permit term or condition, and *any require-*

*ment to obtain a permit as a condition of operations* which is in effect under [Chapter 85] ... or under an applicable implementation plan." 42 U.S.C. § 7604(f)(4) (emphasis added). The action brought by the United States against Duke Energy alleges that Duke Energy failed to obtain permits to modify eight coal-burning electrical generating plants as required by the PSD provisions of the Clean Air Act and the State Implementation Plans of North Carolina and South Carolina. Therefore, Applicants contend that the suit initiated by the United States alleges the violation of an "emission standard or limitation," and Section 304(b)(1)(B) provides an unconditional statutory right to intervene. *See Illinois v. Commonwealth Edison Co.,* 490 F.Supp. 1145, 1150 (N.D.Ill.1980) (holding that the failure to obtain a permit as required by state regulation establishes a claim under Section 304(a)(1) of the Clean Air Act).

Duke Energy provides two responses to Applicants' assertion of an unconditional statutory right to intervene. First, Duke Energy contends that a permit authorizing the modification of a major emitting facility, which the Government alleges Duke Energy failed to obtain, is not a "permit as a condition of operations" and therefore does not come within the Section 304(f)(4) definition of "emission standard or limitation." Duke Energy contends that the permits it allegedly needed were "construction permits" rather than the permits required as "condition[s] of operations" referred to in Section 304(f)(4). As a result, Duke Energy concludes that the failure to obtain the purportedly required permits is not an alleged violation of an "emission standard or limitation," and Section 304(b)(1)(B) does not provide a statutory right to intervene.

The process of obtaining a permit to modify a major emitting facility involves

the determination of best available control technology ("BACT") for pollutants emitted by the particular facility. *See* 42 U.S.C. § 7475(a)(4). This determination is done on a case-by-case basis, taking into account "energy, environmental, and economic impacts and other costs." 42 U.S.C. § 7479(3). The implementation of BACT is a condition of operation because the Administrator or State may bring an enforcement action seeking injunctive relief for the alleged failure to apply best available control technology. *See* 42 U.S.C. § 7477. Thus, the requirement of obtaining a construction permit amounts to a condition of operations. The permitting process involves the determination of BACT. Absent the proper implementation of BACT, an electrical generator may be enjoined from operating.

■ Duke Energy also argues that accepting Applicants' position that the failure to obtain a construction permit amounts to a violation of an "emission standard or limitation" renders Section 304(a)(3) of the Act superfluous. Section 304(a)(3) provides in pertinent part:

> [A]ny person may commence a civil action on his own behalf ... against any person who proposes to construct or constructs any new or modified major emitting facility without a permit required under part C of subchapter I of this chapter (relating to significant deterioration of air quality) or part D of subchapter I (relating to nonattainment) or who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of any condition of such permit.

42 U.S.C. § 7604(a)(3). Duke Energy contends that this is exactly the type of action that the government has brought, a suit alleging modification of major emitting facilities without the permits required by the PSD provisions of the Clean Air Act. Unlike an action brought by the government to enforce an emission standard or limitation, the Act does not provide an express statutory right to intervene in a government-initiated action alleging modification of a major emitting facility without a permit.

Applicants agree with Duke Energy that the action brought by the government alleges the type of conduct that could support an action under Section 304(a)(3) of the Act. Applicants contend, however, that Section 304(a)(3) is not the exclusive means of challenging the alleged failure to obtain required construction permits. Based on the statutory definition of "emission standard or limitation" set forth in Section 304(f)(4) and discussed above, Applicants argue that Section 304(a)(1) provides an alternative means of enforcing the construction permit requirement found in the Act's PSD provisions.

Construing Section 304(a)(1) to provide a cause of action for the alleged failure to obtain a required permit results in an overlap between the conduct that will support an action under Section 304(a)(3) and that which comes within the ambit of Section 304(a)(1). Applicants conceded at the hearing for this motion that under their interpretation of the Act all conduct which could constitute the basis for an action under Section 304(a)(3) could also be challenged under Section 304(a)(1). Duke Energy contends that this result violates the general rule of statutory construction that courts should interpret statutes in such a way as not to "render[ ] some words altogether redundant." *United States v. Alaska,* 521 U.S. 1, 59, 117 S.Ct. 1888, 138 L.Ed.2d 231 (1997).

Despite the overlap between the two sections of the Clean Air Act's citizen suit provision, interpreting Section 304(a)(1) to provide a cause of action for the failure to obtain a permit does not render Section 304(a)(3) superfluous. Different require-

ments exist for bringing suit under the two sections. Section 304(a)(1) permits suit only after expiration of a sixty-day notice period. 42 U.S.C. § 7604(b)(1)(A). Section 304(a)(1) also bars suit if the government has commenced and is diligently prosecuting suit for alleged violations of an emission standard or limitation. 42 U.S.C. § 7604(b)(1)(B). Section 304(a)(3) contains neither of these limitations.

In addition, the plain language of the citizen suit provision indicates an intent for some overlap between Sections 304(a)(1) and 304(a)(3). Section 304(a)(3) allows commencement of an action for alleged modification of a major emitting facility without prior attainment of a permit. It also provides a cause of action for an alleged "violation of any condition" of an existing permit. 42 U.S.C. § 7604(a)(3). Permits issued under the PSD provisions of the Clean Air Act set emission standards and limitations. *See* 42 U.S.C. § 7475(a)(1). As a result, the violation of an emission standard or limitation may also violate a condition of an existing permit. Under the plain terms of the statute, the violation of an emission standard or limitation may serve as the basis for a citizen suit brought under Section 304(a)(1) or one brought pursuant to Section 304(a)(3).

Based on the statutory definition of "emission standard or limitation" set forth in Section 304(f)(4), the procedural differences between Sections 304(a)(1) and 304(a)(3), and the clear overlap contemplated between those two sections of the citizen suit provision, the court finds that Section 304(b)(1)(B) provides Applicants with a statutory right of intervention. This right to intervene is unconditional because Section 304(b)(1)(B) states that if the government has initiated an action to require compliance with an emission standard or limitation "any person may intervene *as a matter of right.*" 42 U.S.C. § 7604(b)(1)(B) (emphasis added). Consequently, Applicants' motion for intervention will be granted under Rule 24(a)(1) of the Federal Rules of Civil Procedure.[1]

██ Applicants have an unconditional right to intervene, but this does not prevent the imposition of reasonable limitations on Applicants' participation to ensure the efficient adjudication of the litigation. *See Stringfellow v. Concerned Neighbors in Action,* 480 U.S. 370, 383, 107 S.Ct. 1177, 94 L.Ed.2d 389 (1987) (Brennan, J., concurring) ("[R]estrictions on participation may . . . be placed on an intervenor of right and on an original party."); *United States v. South Florida Water Mgmt. Dist.,* 922 F.2d 704, 710 (11th Cir.1991) (finding intervention of right but remanding to the district court "to condition . . . intervention in this case on such terms as will be consistent with the fair, prompt conduct of this litigation"); Fed.R.Civ.P. 24 advisory committee notes to 1966 amendments ("An intervention of right . . . may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of proceedings."). As with any complex litigation in this district, the parties, including Applicants, are subject to the discovery schedule imposed and monitored by the United States Magistrate Judge assigned to the case. In addition, to avoid duplication, expense, and delay, the magistrate judge may impose limitations on Applicants' participation in the currently ongoing discovery and Applicants' ability to initiate unilateral independent discovery without leave of the court. A conference before the magistrate judge will be

---

1. Having found an unconditional statutory right to intervene under Rule 24(a)(1), the court need not address Applicants' alternative arguments for intervention: intervention of right under Rule 24(a)(2) and permissive intervention under Rule 24(b)(2).

promptly scheduled to establish guidelines for Applicants' participation.

## CONCLUSION

Defendant has allegedly failed to obtain permits required by the Clean Air Act and by applicable State Implementation Plans. Under the Clean Air Act's statutory definition, this constitutes an alleged violation of an "emission standard or limitation." Section 304(b)(1)(B) of the Clean Air Act provides a statutory right to intervene in actions initiated by the Administrator which allege violation of an emission standard or limitation. Although defining the failure to obtain a permit as an emission standard or limitation results in overlap between the conduct that will support an action under Sections 304(a)(1) and 304(a)(3) of the Act, some overlap is clearly contemplated from the plain language of the statute. In addition, significant procedural differences exist between Sections 304(a)(1) and 304(a)(3), ensuring that neither section is superfluous. Consequently, Applicants have a statutory right to intervene and their motion to intervene will be granted pursuant to Rule 24(a)(1) of the Federal Rules of Civil Procedure. Applicants' participation in the litigation will be coordinated with that of the Plaintiff United States to ensure the efficient adjudication of this case.