SECURITIES AND EXCHANGE
COMMISSION, Plaintiff,

v.

Jeffrey NAVIN, Bus/Line Media, the
American Mutual Holding Corp., Dennis
Santiago, Michael Sims, Defendants.

Candice Wozniak, on Behalf of Herself
and all Others Similarly Situated,
Intervenors.

No. C–93–2744 WHO.

United States District Court,
N.D. California.

Feb. 23, 1995.

Sarah D. Moyed, Sylvia M. Scott, Robert D. LaFramenta, Tom W. Rotherbucher, Lori A. Richards, Securities and Exchange Commission, Los Angeles, CA, for Plaintiff.

Thomas A.E. Hesketh, Jay W. Luther, Donald L. Field, Jr., Chickering & Gregory, San Francisco, CA, for defendants Jeffrey Navin, Bus/Line Media.

Timothy T. Scott, Wilson, Sonsini, Goodrich & Rosati, Palo Alto, CA, for Intervenors.

## OPINION AND ORDER

ORRICK, District Judge.

Applicant for intervention, Candice Wozniak ("Wozniak"), brings this motion to inter-

vene as plaintiff on behalf of herself and all others so situated. For the reasons hereinafter stated, the Court GRANTS Wozniak's motion to intervene.

## I.

On July 21, 1993, the Securities and Exchange Commission ("SEC") filed a complaint for preliminary and permanent injunctions with this Court against defendants Jeffrey Navin ("Navin"), Bus/Line Media ("BLM"), The American Mutual Holding Corp. ("American Mutual"), Dennis Santiago, and Michael Sims.

The original complaint alleges that defendants violated the federal securities law by making false and misleading representations in connection with the sale of unregistered securities. The securities consisted of interests in bus shelters containing advertising space. Navin sold these securities through BLM, a sole proprietorship that owned and operated the shelters.

On September 29, 1993 the Court issued a preliminary injunction enjoining Navin and BLM from committing further violations. On October 22, 1993 the Court entered judgments for permanent injunctions against Sims, Santiago, and American Mutual. Pursuant to a consent decree, Navin was removed from the business, and a receiver was appointed to operate the assets of BLM. All actions against Navin and the other defendants were stayed.

Wozniak, on behalf of herself and all others similarly situated, filed this motion for leave to intervene as a plaintiff pursuant to Federal Rule of Civil Procedure 24(a).[1] Wozniak seeks to intervene on the grounds that she and all others similarly situated are investors in Navin's enterprise of Bus/Line Media, and the investors have an interest in the litigation and in the assets constituting BLM currently being managed by the court-appointed receiver. Wozniak further asserts that the proposed intervening class' interests are not adequately represented by the existing parties, that the intervening class' ability to protect those interests will be impaired if leave to intervene is not granted, and that this motion is timely brought.

Wozniak is a resident of Santa Clara County, California. She invested $600,000 in BLM and is the largest single investor in BLM. Wozniak believes there are at least 200 investors in BLM. Wozniak argues that now that Navin has been removed from the business, the only remaining issue is how to dispose of the assets held by Navin/BLM. None of the investors own stock or any formal interest in the business. At present, alleges Wozniak, there is no means by which to return to the investors the business in which they invested. Wozniak also states that as defendants' largest creditors, there is no means for the investors to obtain any appreciable value from liquidation of the assets because the bus shelters themselves are nearly worthless. Wozniak argues that the only real value in the business is its relations with the advertisers and the municipalities in which the shelters have been erected. Wozniak states that the only way to preserve the value of the business is to keep these relations intact and keep the business going.

If Wozniak's motion to intervene is granted, she plans to file a complaint, that is nearly identical to the complaint filed by the SEC. Wozniak then proposes to be certified as a representative of all BLM investors. Immediately upon her certification, Wozniak intends to settle the investors' claims against Navin in return for the receiver's transfer of the BLM assets and liabilities to a new corporation. This new corporation will be owned by BLM investors in proportion to each investor's net investment in BLM. Shares in the new corporation will be issued to the investors pursuant to the Registration Exemption contained in § 3(a)(10) of the Securities Act of 1933. After the transfer, the

---

1. Federal Rule of Civil Procedure 24(a) provides that:

 Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's interest, unless the applicant's interest is adequately represented by existing parties.

new corporation will hold a shareholder meeting to elect management, who will then operate the business for the benefit of its shareholders.

Wozniak argues that the SEC's plan of termination of the receivership followed by liquidation of the assets will preclude any realization of the shelters' going-concern value, and thereby might impair the defrauded investors' ability to recover the money they lost as a result of defendants' fraudulent scheme.

The SEC opposes Wozniak's motion to intervene. The SEC alleges that Wozniak's motion to intervene is her first step towards an attempt to resolve the investors' claims against Jeffrey Navin in return for the transfer of BLM's assets and liabilities to a new corporation that would issue securities, without registering them with the Commission, purportedly pursuant to the exemption from registration set forth in § 3(a)(10) of the Securities Act of 1933.[2]

The SEC argues that: (1) § 3(a)(10) of the Securities Act exemption that would exempt BLM from registration is not applicable to this case; (2) an equitable distribution of BLM's assets by selling all of the bus shelters and distributing the proceeds to investors is appropriate; and (3) the proposed intervenor's motion to intervene should be denied because Wozniak is not entitled to intervene as of right pursuant to Fed. R.Civ.P. 24(a), and Wozniak should not be allowed to permissively intervene under Rule 24(b) as it would increase and complicate the litigation.

The SEC next recommends that the Court order the receiver to sell BLM's remaining assets and distribute the proceeds to investors. Finally, the SEC argues that the motion to intervene as of right should be denied

because the proposed intervenors' interests are adequately represented in this case by both the SEC and the receiver. The SEC additionally asserts that if the motion is treated as one for permissive intervention, it should be denied because intervention would only serve to unduly delay, prejudice, and complicate the adjudication of this case.

## II.

### A. *Section 3(a)(10) and Equitable Distribution*

 The SEC argues that the exemption set forth in section 3(a)(10) is usually applied in cases involving settlement of class action lawsuits. The SEC alleges that there is only one reported case involving application of this exemption from registration in a Commission enforcement action. *SEC v. Blinder Robinson & Co.*, 511 F.Supp. 799 (D.Colo. 1981). The SEC also argues that historically, this exemption from registration has been utilized by companies that have previously registered the issuance of securities with the Commission and that have complied with the reporting provisions of the Securities Exchange Act of 1934; therefore, this exemption from registration is not appropriate for the issuance of securities in the proposed intervenor's newly formed company.

The intervenor replies that the SEC is improperly seeking to litigate at the intervention phase the ultimate question—not presently before the Court—of whether issuance of BLM securities to the investors would be "fair" to investors under the registration exemption of § 3(a)(10). Wozniak states that she is not currently seeking a fairness hearing regarding a § 3(a)(10) exemption, though she intends to seek such a hearing later.

---

**2.** Section 3(a)(10) provides:

Except as hereinafter expressly provided the provisions of this title shall not apply to any of the following classes of securities:

. . . . .

(10) Except with respect to a security exchanged in a case under title 11 of the United States Code [bankruptcy], any security which is issued in exchange for one or more bona fide outstanding securities, claims or property interests, or partly in such exchange and partly

for cash, where the terms and conditions of such issuance and exchange are approved, after a hearing upon the fairness of such terms and conditions at which all persons to whom it is proposed to issue securities in such exchange shall have the right to appear, by any court, or by any official or agency of the United States, or by any State or Territorial banking or insurance commission or other governmental authority expressly authorized by law to grant such approval.

The SEC next recommends that the Court order the receiver to sell BLM's remaining assets and distribute the proceeds to investors. Wozniak argues that the SEC is proposing a plan whereby all investors' security interests will vanish and the assets will be sold at 7% of the amount paid by the investors for those assets.[3]

The Court finds that determination of the fairness of any plan for the BLM assets is not ripe for decision at this time. The sole issue before the Court is the properness of the proposed intervention.

### B. *Intervention as of Right*

■ Intervention is permitted as "of right" when "the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." Fed.R.Civ.P. 24(a)(2). The burden is on the prospective intervenor to demonstrate that the conditions for intervention are satisfied. *Petrol Stops Northwest v. Continental Oil Co.,* 647 F.2d 1005, 1010 n. 5 (9th Cir.), *cert. denied* 454 U.S. 1098, 102 S.Ct. 672, 70 L.Ed.2d 639 (1981); Schwarzer, Tashima & Wagstaffe, *Cal. Prac. Guide: Fed.Civ.Pro. Before Trial* at ¶ 7:269 (1994) (hereinafter "Schwarzer").

■ The Ninth Circuit has adopted a four-part test to resolve applications for intervention of right under Fed.R.Civ.P. 24(a)(2):

An order granting intervention as of right is appropriate if (1) the applicant's motion is timely; (2) the applicant has asserted an interest relating to the property or transaction which is the subject of the action; (3) the applicant is so situated that without intervention the disposition may, as a practical matter, impair or impede its ability to protect that interest; and (4) the applicant's interest is not adequately represented by the existing parties.

*U.S. ex rel. McGough v. Covington Technologies,* 967 F.2d 1391, 1394 (9th Cir.1992) (citing *County of Orange v. Air California,* 799 F.2d 535, 537 (9th Cir.1986), *cert. denied,* 480 U.S. 946, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987)). "Generally, Rule 24(a)(2) is construed broadly in favor of proposed intervenors and 'we are guided primarily by practical considerations.'" *Id.* (quoting *United States v. Stringfellow,* 783 F.2d 821, 826 (9th Cir.1986) *vacated on other grounds* 480 U.S. 370, 107 S.Ct. 1177, 94 L.Ed.2d 389 (1987)).

### 1. Timeliness

■ In determining whether a motion to intervene is timely, three factors apply:

(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason and length of the delay.

*McGough,* 967 F.2d at 1395 (citing *Air California,* 799 F.2d at 537).

■ Wozniak argues that this motion is timely because the assets of the receivership have not yet been liquidated. She argues that there is no prejudice to either the defendants or the SEC. Furthermore, Wozniak says the defrauded investors have not unreasonably delayed in bringing the motion, "in view of the Court's order prohibiting the them [sic] from prosecuting the claims they now seek to settle before the assets are liquidated." (Memo of P's and A's in Supp. of Mot. to Intervene as a Plaintiff at 5:26–28.)

The Court finds that this motion is timely. To be timely, an intervenor does not have to move to intervene immediately. *See NAACP v. New York,* 413 U.S. 345, 367, 93 S.Ct. 2591, 2603–04, 37 L.Ed.2d 648 (1973). Wozniak is intervening before the assets of the receivership are liquidated in an attempt to preserve some portion her investment and the investments of all others similarly situated. No other parties will be prejudiced by this intervention.

---

**3.** Wozniak arrives at 7% by dividing the receiver's estimate of the value that might be realized by a sale of the assets ($500,000) by the total amount invested in those assets (approximately $7,000,000).

**440**

## 2. Applicant has an Interest Relating to the Property

■ The would-be intervenor must show "a protectible interest of sufficient magnitude to warrant inclusion in the action." *Smith v. Pangilinan*, 651 F.2d 1320, 1324 (9th Cir. 1981). The Ninth Circuit views the interest test as "primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *County of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir.1980); Schwarzer, ¶ 7:213.

The fact that Wozniak and others similarly situated invested in BLM and face losing most of their investment without intervening at this point, gives them an interest relating to the property. The SEC claims it and the receiver have the *same* interest as the investors. However, the SEC believes that the investors' potential recovery will be maximized by a distribution of BLM's assets through the receivership estate. This argument by the SEC does not change the fact that Wozniak meets the interest prong of the test.

## 3. Impaired or Impeded Interest

It must also be shown that disposition of the pending action would have a potential adverse impact on the would-be intervenor's interest. Schwarzer ¶ 7:225. A judicial decision that would "as a practical matter" foreclose the would-be intervenor's interest, is sufficient impairment. *Sierra Club v. United States EPA*, 995 F.2d 1478, 1486 (9th Cir. 1993). In *SEC v. Flight Transportation Corp.*, 699 F.2d 943, 948 (8th Cir.1983), a creditor was allowed to intervene in an SEC action against a corporation seeking disgorgement to defraud investors. A receiver had been appointed for all of the corporation's assets and, if the assets were "disgorged," the creditor would be unable to obtain satisfaction of its claim. Thus, concluded the court, its interests may potentially be foreclosed by the pending action. *Id.* at 948; Schwarzer, ¶ 7:299.

Wozniak argues that if intervention is not granted, the investor's interest will be impaired or impeded. The investors will not be able to protect their interest in the going-concern value of the assets if the receiver moves to terminate the receivership and liquidates the assets. *See United States v. Stringfellow*, 783 F.2d 821, 827 (9th Cir. 1986) *vacated on other grounds* 480 U.S. 370, 107 S.Ct. 1177, 94 L.Ed.2d 389 (1987) (if prospective intervenor seeks to obtain remedies that differ from those sought by original plaintiffs, it is reasonable to conclude that disposition of the litigation may impair the prospective intervenor's ability to protect its interest).

The SEC argues that among investors there may be distinct and separate desires regarding the distribution of assets. Some investors may want to receive *pro rata* shares of BLM's assets now, as opposed to incurring BLM's liabilities in the hope of receiving a greater return in the future. The SEC alleges that Wozniak is unaware that significant additional capital would be required to enable BLM to operate as a going concern. Investors have already lost substantial sums of money, and it would be unfair for them to have to invest additional capital in a company when it is unclear if such Company can operate as a going concern. Furthermore, the SEC states that the receiver must report his findings to the Court and make a proposal for distribution of assets. This distribution must be approved by the Court, and in this process, individual investors and creditors will have the opportunity to express their views to the Court with respect to the disposition of the assets and with respect to the allocation of any remaining investor monies.

Following the reasoning of *SEC v. Flight* and *United States v. Stringfellow*, the Court finds that the prospective intervenors are seeking to obtain remedies different from those sought by the original plaintiffs, and the defrauded investors may be unable to obtain satisfaction of their claims against defendants. Therefore, their interests may potentially be foreclosed by the pending action.

## 4. Adequate Representation

■ Although the proposed intervenor's interest may be impaired or impeded, there is no right to intervene if "the applicant's interest is adequately represented by exist-

ing parties." Fed.R.Civ.P. 24(a)(2). The requirement of inadequacy of representation is satisfied if the applicant shows that representation of her interests *may* be inadequate, and the burden of making that showing is minimal. *U.S. v. Stringfellow,* 783 F.2d at 827. To determine whether the original party to a private action will adequately represent the intervenor's interests, the Court considers the following three factors: (1) whether the interests of the present party are such that it will make all of the arguments the intervenor would make; (2) whether the present party is capable of and willing to make such arguments; and (3) whether the intervenor would offer a necessary element to the proceedings that the other parties would neglect. *Sagebrush Rebellion, Inc. v. Watt,* 713 F.2d 525, 528 (9th Cir.1983); *see* Schwarzer, ¶ 7:237. The Ninth Circuit has denied intervention as of right where it was clear the existing parties would make all of the arguments that the applicants for intervention would make. *State of California v. Tahoe Regional Planning Agency,* 792 F.2d 775, 779 (9th Cir.1988).

■ Wozniak argues that neither the SEC nor the receiver adequately represent the interests of the defrauded investors in this case. "The fact that neither one has expressed a willingness to submit the settlement proposed by the defrauded investors is sufficient to meet the investor's minimal burden of demonstrating why the existing parties' representation of their interests 'may be' inadequate." (Memo of P's and A's in Supp. of Mot. to Intervene as a Plaintiff at 5:15–19.)

The SEC asserts that Wozniak has made no showing, minimal or otherwise, that the SEC and/or the receiver may not adequately represent her interests. The SEC replies that it has not endorsed Wozniak's proposed settlement because the proposed settlement is not in her's or any other investor's best interest. Wozniak argues that the SEC's fervent opposition to her proposal for a § 3(a)(10) exemption satisfies this requirement. Wozniak states that it is not for the SEC but for Wozniak to determine her own best interest. Wozniak also states that if allowed to intervene, she will propose a plan of allocation that will allow any investor who wishes to opt out an opportunity to do so. Wozniak claims that questions such as whether or not such a plan will work, or be fair, and whether the business can survive or will require additional capital, are all issues that should be addressed when Wozniak proposes her plan. Finally, Wozniak states that she should be given an opportunity to propose her plan for court approval, and intervention is the only means of providing her this opportunity.

The SEC disagrees. The SEC states that pursuant to Local Rule 225.6, the proposed intervenor must be given notice as an interested party of any hearing regarding the sales of property. Thus, once the receiver makes his recommendation to the Court regarding the proper disposition of BLM's assets, the proposed intervenor, as well as investors will be given the opportunity to be heard on this issue even absent intervention.

The Court finds the SEC's arguments unpersuasive. The Ninth Circuit has specifically held that the burden of making the show of inadequate representation is minimal. *See United States v. Stringfellow,* 783 F.2d at 827. Wozniak has shown that the investors' interests may differ from those of the SEC.

First, the SEC could, but has made it clear it will not make all of the arguments that the proposed intervenor would make. Second, the proposed intervenor offers a necessary element to the proceedings that the other parties would neglect.

IT IS HEREBY ORDERED that:

The motion of Candice Wozniak, on behalf of herself and all others so situated, to intervene as a plaintiff in this action is GRANTED.